Good morning. May it please the Court, Assistant Federal Defender Lee Tucker for Douglas Lopez. I'll reserve two minutes for rebuttal. The conviction in this case should be reversed for three independent reasons. First, the District Court abused its discretion in admitting evidence regarding the nature of Mr. Lopez's prior convictions for illegal reentry, because that evidence... Let me ask you about the mental disease or defect. I think that's what, if I remember right, you led off with in the brief, and I thought it was an interesting claim. It looked to me, when I read it, and I want you to educate me because I may misunderstand, and it looked to me as though the case was, no one could do anything as stupid as this fellow did, unless he was crazy. And I couldn't see that. It looked to me like he was trying to tell the Court, I already did my time for my crime, and now the government is just persecuting me over and over again, and I want the jury to know that. And does that seem like a poor legal strategy, but not an absurd argument, and one that might have some jury appeal? I just couldn't see why sua sponte would, none of the lawyers saying there was anything wrong with the fellow, defense lawyer not saying there was anything wrong with his mental capacity or mental defect, why the judge had to order a competency hearing in that circumstance. Your Honor, if that were the strategy, then I agree with you, there would not be a duty on the judge to inquire into competency. But here, there was such a continuing line of instances in which he appeared, in which he was irrational and paranoid, and even if that had been his strategy, he did not articulate that in any fashion. And, in fact, I didn't see the irrationality and paranoia when I, in what I read. What do you mean? Well, the paranoia, he, before the magistrate judge, he said that you guys are trying to keep things from me, you see what I mean, they're hiding things from me, and I believe also there was a pre-hearing, a pre-trial motion hearing where he talked about, excuse me, talked about people keeping things from him or not being clear. When the judge asked him, you know, it seems to me the only person who really articulated that that could have been a strategy was his lawyer at the 11th hour after repeatedly saying to the district court, you know, I can't tell where this guy is coming from, I can't articulate a theory of the defense, which, of course, does indicate it is one of the aspects of incompetency. And, but Mr. Lopez himself It wasn't a valid theory of defense, but I thought he made it pretty clear. He kept saying, I did my time on that. Well, actually. I paid my debt to society. Excuse me, Your Honor. He actually never said that. I suspect that Your Honors, and certainly as defense counsel, we've seen and heard that theory. It's a common one. He never said that. And, in fact, when the district court said to Mr. Lopez, look, you do not want to talk about your prior assault with a deadly weapon, the jury's going to hold that against you. He said, I don't care if they hold it against me. They need to know the truth. So I understand the concern. I'm sure. So why is that a signal that he might be mentally incompetent? They need to know the truth. Well, Your Honor. He'd just be obstinate. You know, he'd just be a difficult client. He could be obstinate. So the fact that this is his third illegal reentry prosecution and he still doesn't understand the elements of the offense. He's still I mean, this is the third time that he's been enhanced for a prior crime. And he still continues to say, what does that have to do with anything? And he just doesn't understand the legal process. Well, Your Honor, that would be incompetence if he's not able to understand the legal process. Well, I mean, there's a different I mean, there's a line there, though. Well, part of it is I mean, it doesn't have to be you know, you don't have a lot of people don't understand the legal system, how it works, and they're not incompetent to stand trial. If he's going to a complicated system. It is, Your Honor. If he's going to trial, not understanding as he clearly is not the elements of the offense with which he's being tried. That is a sign of incompetence. And it makes him unable to assist his attorney. But there was no evidence of any kind of mental problem. No, Your Honor. And that's not a requirement. No, I understood. But it helps. I think it is a requirement. It's not your. It's not an absolute requirement. It helps. It has to be because of a mental disease or defect. But there's no requirement that there be medical history prior to the hearing. It's not a sine qua non, but it is rare to the point of possibly never. As I recall, we have a case saying that anyone is entitled to the relief you seek where they don't have medical evidence. No, I believe that overstates the law, Your Honor. It is one factor among many. It's probably a very important factor, though. Well, it kind of puts a client like Mr. Lopez in a catch-22. And it would help if the lawyer would say, hey, judge, I really think there's a problem with this guy. Let's do a competency evaluation. That would help, Your Honor. And most judges would say, well, you know, just on the safe side, let's do it. Yes. I'd like to move to the evidentiary argument. The the because although I led with the competency argument on the briefs as I prepared, I actually think that the evidentiary argument is quite strong, and I want to address that. Please do, because I think it's your the case. Absolutely. Thank you, Your Honor. So the 404b2 evidence that the government introduced over objection was not relevant for the purpose for which it was introduced. Why wasn't it? His defense was mistake. I was in the U.S. by mistake. I was just out hunting, and I didn't realize I crossed the line. And his prior reentries tend to prove the absence of mistake, which is 404b. Excuse me, Your Honor. They in no way prove the absence of mistake. His testimony was he was wandering in the desert and didn't realize he'd crossed. The only way that those would prove absence of mistake would be if there was some indication that they involved similar circumstances. As you know, this is a general intent crime. The government can't use these priors to show, well, he intended to come in illegally. They're trying to use them to show that, oh, no, he wasn't mistaken. Now, his evidence, there was no direct test, no direct evidence contradicting him. There's no fence. It's a very remote area. The Mexican side looks exactly like the U.S. side. And there was no any demarcation of the border there. There is no demarcation and there was no testimony by either the government witnesses or Mr. Lopez as to any demarcation. Can we back up one second? Is mistake a defense to a section 1326 found in crime? Yes, because the defendant has to knowingly enter the United States. I don't think the crime is worded that way. I think they have to have knowledge because all they have to do is voluntarily and enter. But I think it's being found in. It's an element. I thought see enter was part of the defense rather than an element of being found in the center to enter. But the actual entry has to be voluntary and knowing. And that's in the indictment. And it's in the jury instructions. So it's also a subject on which we have conflicting authority in the Ninth Circuit. In Salazar Gonzalez, we said that the found in offense requires that the government put beyond a reasonable doubt that he entered voluntarily and had knowledge that he was committing the underlying act that made his conduct illegal, entering or remaining. So he had to have known that he crossed the border. And then we have Alvarez Ulloa that says the elements of a found in crime are the defendant is an alien, has previously been removed, was subsequently found and did not have permission, which has no intent or knowledge requirement. Thank you. Well, clearly, the government believed that it was required to show lack of mistake. And they put these prior offenses before the jury. And it was not harmless. We see from the record. And if you look at the jury, the record as a whole, including the juror questions and the juror deliberations, it's clear that they were very interested in this issue. They asked three questions. What happened to the friend you were with hunting? Was there a fence? And when did you know you were in the United States? They asked those prior to the government introducing these priors on rebuttal. Wait a second. The jury was allowed to ask questions or they sent questions during the testimony? Well, Your Honor, yes. What? Apparently, they don't have that here in the excerpts. Tell me or tell me where to look. It's toward the end of the second day. It's it's after the And the judge says, oh, whoops, I have these questions. I forgot to ask them. I'm down to 45 seconds. And you can answer the question. All right. Thank you. You can give us the citations to the transcript later. Thank you. Is your argument. And and then the government gets in this this this evidence. And then even with that evidence, which is clearly propensity evidence, the jury was out two hours. So the government cannot meet its burden of showing harmlessness. This more than likely would have impacted at least one juror's decision as to reasonable doubt. And furthermore, in addition, the 403 403 was violated because the district court judge never considered the content of the 404 B2 evidence. And under McElmurray and Curtin, the judge is required to do that. And furthermore, there was no balancing of the prejudicial versus probative value. And because the probative value was minimal to none, it was unduly prejudicial. Thank you. All right. Thank you, counsel. Mr. Brown. Good morning, Your Honors. May it please the court. My name is Chris Brown. I'm with the United States Attorney's Office in Tucson, Arizona. There are two or three issues in this case. The first one, as was already noted, is whether the district court erred or plainly erred by not sui sponte conducting a mental competency hearing in this case. And the answer to that question is no, there was no plain error. There was no error at all, as was already noted in during the during the presentation of defendant's argument. There was no medical history in this case. And after doing some research, most of the cases that I saw involved at least some medical history. Now, the case law says that that's one factor to consider. But it certainly looks like in almost every case, at least the ones that I reviewed, there was medical history. Defense counsel's statements regarding competency, there was one statement in this case, and that was made by the defense counsel at the evidentiary hearing. And the defense counsel was asked by the magistrate judge at the evidentiary hearing following the trial whether or not there were any competency issues. And the defense attorney said that there were no issues with competency. He said, Your Honor, I know what you mean. I understand what you're saying. But I'm sorry about that. I just have one question for you in this whole area, and that is, he did kind of act a little weird, a little odd during the course of the trial. Shouldn't the judge have just said, Hey, do we have a problem here? Do we need to get a competency evaluation? I would argue that his behavior was unorthodox, but it wasn't irrational. I think that he had a couple of defenses. One of them was, I presume what you can reasonably infer was a jury nullification issue. He wanted to argue to the jury, at least present evidence on the fact that he had been convicted a couple of times before, and that he thinks this is unfair. And I think that's very similar to the sovereign citizen case that was cited. I mean, he believes he doesn't believe in the laws of the United States. He thinks that he should be able to tell the jury that. The second reason I don't think that he was acting irrationally or in an unorthodox way is because he presented this defense of that the jury disregarded because it was ridiculous, but that he was hunting snakes in the desert in northern areas in northern Mexico. See, I don't see why that was such a ridiculous defense. But I mean, the evidence showed that he was deported to Central America. So he denied that fact. Where does the government drop people off when they're deporting them to Central America? I believe he was deported by air. You mean he wasn't Mexican? He was put on a plane to Central America? That's correct. Are you sure? Where in the record does it show that? Because I'm somewhat familiar with this. And my understanding is that a lot of Central Americans are deported by being dropped off in Mexico, and they have to find their way from Mexico to Central America. In this case, I believe the evidence showed that the defendant was deported to Nicaragua in May. I don't have a year written down. I understand they're deported to a particular country, but what they do is they take them by bus in Nogales and Sonora in Arizona, and they take them there, and then they wash them, get off the bus, and they go to Mexico, and they're supposed to make their way back to Central America. I don't know what the document says specifically in this case, but the documents do indicate if it was a JPATS, if they were deported from an airport to another location. But it does say that. And even if he were deported by airport, he wasn't going to be deported right across the border. So I think he was. This is an Arizona case, right? Correct. It looks like this was the Arizona Border Patrol, and that's where they dropped the people off. No, if he's from Nicaragua, he would be deported to Nicaragua in most cases. Have you watched what they do down there? Yes. You have? Well, anyway, I don't want to quibble about that. But I do want to quibble with his defense is totally ridiculous. But the more important question is, is mistake an action? I mean, what is the government's position on whether a mistake is actually a defense to the found in? Our position would be that it would be. It could be a defense. It is a defense. Yes. Okay. How did the prior convictions show a lack of mistake and not merely propensity? Well, the district court judge held after the prosecutor approached her at sidebar after the defense raised the defendant on direct examination said that he was hunting snakes in Mexico and ended up in the United States. So at sidebar, the prosecutor asked the judge if she could now unsanitize the prior convictions. They had already been admitted under Rule 609, sanitized, unsanitized the part that says illegal reentry. And the reason that the prosecutor wanted to do that was because that would show that the defendant had been convicted on prior occasion of the same offense. And in both cases, the jury would have had to have fined or the defendant would have had to plead to the elements of knowing involuntary entry. The judge heard that and then allowed the prosecutor to present that evidence. It's not the same as the assault with a deadly weapon conviction that the defendant. No, that's a totally different thing. This is evidence that the government wanted to put on and saying that it showed intent. Isn't that what they were arguing? It showed intent? And it does because the defendant has to be found guilty of knowing involuntary entry. Those facts have to be proven on a prior occasion. So if he had reentered voluntarily and knowingly on a prior occasion, it's much more likely that he wasn't mistaken when he entered the United States this time, especially given the fact that reasonably you can infer that he came from farther away than just across the border to go hunting snakes with somebody for days in northern Mexico. The court failed to conduct the Rule 403 balancing test, right? I think the court implicitly conducted the balancing test, and I think. Okay. Well, I think it didn't from the transcript. It didn't on the transcript anyway. But if you were going to introduce that evidence, couldn't you have introduced less prejudicial evidence, such as materials from the A file that showed he had been deported rather than using actual convictions? Those documents were admitted. There were prior deports that did come in, and I believe. But isn't that sufficient to meet your intent element? Well, I can't cite a case about the government's broad latitude to prove its case as it sees fit, but I think that's a generally understood principle. No, no. It's not, because there's rules of evidence that apply and that restrict the amount of evidence the government can put in as it sees fit. I was going to say as long as it's for a proper purpose. Well, that's the question here. That's exactly what we're discussing, whether this was a proper purpose. And the second step is, was it unduly prejudicial, given that you already had the other deportations in evidence? Well, it wasn't propensity evidence like the assault with a deadly weapon conviction. We weren't trying to show that the defendant was a bad person, and therefore you should convict him. What the government was seeking to show was that he had already admitted or had been proven to be voluntarily and only in the United States on previous occasions, and therefore it's less likely he's mistaken this time. The court gave a specific limiting instruction that the jury could only use the evidence for that particular purpose, and they also gave another instruction about the 609 rule that it can only be used for impeachment, but I think that got swallowed up in the 404B rule. The judge, I think, did perform a 403 balancing test implicitly. They don't have to do it explicitly. She specifically said the government couldn't get in the facts, and presumably because some of those facts could have been harmful to the defendant. But on a 404B issue, all you have to – all the government has to show is that there's a tendency to prove a material fact. In this case, those prior convictions had a tendency to prove a material fact, and that was that he knowingly and voluntarily was in the United States. And so the other – the last issue I would – I just wanted to cover was – Before you do that, is it the government's obligation to prove an absence of mistake? The government's – Or is that his burden to prove it as an affirmative defense? It's not an affirmative defense. The government still has to prove its case beyond a reasonable doubt, which I think we did in this case, even if – But how does a mistake work as a defense, then? So once he raises it, it means you have to negate it. Once he – well, the jury can buy it, or the jury doesn't necessarily have to buy it. The jury can take that evidence from him. The jury is not – the jury is not separately instructed on mistake as a defense? No. They're not separately instructed on mistake. However, the government can show absence of mistake. The last issue I just wanted to cover is even if this – Strange. Even if this – even if the evidence were excluded, the – it was – or even if it was error, it was harmless error because the defendant – the government proved that the defendant had entered the United States without permission. There were limiting instructions given in this case. The government reminded the jury of those limiting instructions during closing argument. There was evidence that the defendant had been deported to Nicaragua. The defendant provided a false name to the Border Patrol agent, showing consciousness of guilt at the time that he was apprehended. And so we – Let me ask you something that's bothering me here. May I do that? Of course. I know we're over time, but I looked at the indictment, and he's charged with found in under 1326. And then I look at the instruction, and the judge tells the jury that the government has to prove each of the following elements beyond a reasonable doubt. First, the defendant was removed from the United States. Second, thereafter, the defendant knowingly and voluntarily reentered the United States without having obtained the consent of the Attorney General and so forth. I had thought that that was the form instruction for a different crime and not the found in crime. Is this now the form instruction for the found in crime? I believe so. I don't know the answer to that question, but I do believe that we – There's another crime for entering or attempting to reenter. There is another crime for attempting to reenter. That's correct. And it looked to me like this was from that form rather than the found in. I'm not sure about that, Your Honor. That, I think, is what's generating our questions to you about whether it's a defense or an element. Who does the defendant have to prove mistake or the government prove absence of mistake? It's kind of confusing here. Maybe the forms have changed. I don't know. The government – the answer to that question for our position is that the government has to prove beyond a reasonable doubt that he knowingly and voluntarily entered or was found in the United States. The absence of – the defendant's claim of mistake is not an affirmative defense, but it's – Well, here, you have to prove scienter and mens rea the way the judge instructed the jury. Correct. And I think under the old forms, you didn't. I'm not sure about that. So, in effect, once he raises it, your evidence has got to be beyond a reasonable doubt that he intentionally – essentially to negate that. That's correct, Your Honor. That suggestion that it was by mistake. That's correct. Okay. So, the only last question I know we're going over, but at the end of her argument, counsel raised the questions that were asked by the jury that went to this issue. Does that – do you agree those questions were asked? I didn't. I didn't see that. I was looking for that citation as well. Well, assuming they were asked, doesn't that make this case a bit closer in terms of the prejudice coming from the introduction of the convictions? I don't think so. I think that even if the evidence – even if there was error, the deports were already in evidence. And so the jury already knew he had been deported. You're making my argument as to why – or my thought as to why the deports weren't sufficient and why putting in the convictions was unduly prejudicial. Well, I think, one, they were properly admitted because they aren't propensity evidence. They go to – they were offered to – Propensity is not admissible. That's what you can't use it for. That's correct. They weren't offered for propensity. They were offered to show absence of mistake. However, even if there was error in that regard, the government proved its case beyond a reasonable doubt without that evidence because of the overwhelming evidence against the defendant in this case. He had been deported. He had given a false name to the Border Patrol agent showing consciousness of guilt. This isn't somebody who appeared to not know what he was doing at the time he was apprehended. He was clearly trying to do something improper. Thank you, counsel. Thank you. Do you have those citations for us? Yes, I do, Your Honor. It's at pages 109 to 110 of the excerpts of record, too. 10 of the excerpts of record. All right. Thank you very much. U.S. v. Lopez-Vivas will be submitted. We'll take up Weiner v. Berglund.
judges: Kleinfeld, Wardlaw, Paez